**Seth H. Row,** OSB No. 021845
seth.row@stoel.com
**Nathan R. Morales,** OSB No. 145763
nathan.morales@stoel.com
**Alexandra Choi Giza,** OSB No. 214485
alexandra.giza@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

**Ian H. Fisher** (*pro hac vice*)
ifisher@taftlaw.com
**Ioana M. Guset** (*pro hac vice*)
iguset@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker, Suite 2600
Chicago, IL 60601-4208
Telephone:  (312) 527-4000

*Attorneys for Pacific Residential Mortgage, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN RE:<br><br>PACIFIC RESIDENTIAL MORTGAGE, LLC DATA SECURITY INCIDENT | 3:25-cv-00549-SI (Lead Case)<br>3:25-cv-00555-SI (Trailing Case)<br>3:25-cv-00574-SI (Trailing Case)<br><br>**DEFENDANT PACIFIC RESIDENTIAL MORTGAGE, LLC'S MOTION AND MEMORANDUM OF LAW TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

# <u>TABLE OF CONTENTS</u>

**Page**

LOCAL RULE 7-2(a) CERTIFICATE OF COMPLIANCE .......................................... 1

MOTION........................................................................................................................ 1

MEMORANDUM IN SUPPORT.................................................................................... 1

I.      INTRODUCTION ............................................................................... 1

II.     RELEVANT ALLEGATIONS............................................................. 2

III.    RULE 12(B)(1): PLAINTIFFS LACK STANDING FOR THEIR CLAIMS. ............................................................................................ 5

      A.      Plaintiffs' Allegations Based on the Risk of Future Identity Theft Do Not Support Standing in an Action for Damages or Injunctive Relief............................................................................................ 6

      B.      Plaintiffs' Allegations of Mitigation Efforts, "Stress," Loss of Value of PII, and Benefit of the Bargain Cannot Establish Standing. ................................................................................... 10

      C.      Plaintiffs Have Not Alleged a "Privacy" Injury Sufficient to Establish Standing.............................................................. 15

IV.     RULE 12(B)(6): PLAINTIFFS FAIL TO STATE PRIMA FACIE ELEMENTS OF EACH CLAIM.......................................................... 19

      A.      Plaintiffs Fail to Allege Damages (Counts I – III)................................. 20

      B.      The Negligence and Negligence Per Se Claims Should Also be Dismissed Because Plaintiffs Failed to Plausibly Allege a "Special Relationship" to Overcome the Economic Loss Doctrine (Counts I & II). ................................................................................... 21

      C.      Plaintiffs' Negligence Per Se Claim Should Additionally be Dismissed Because Plaintiffs Failed to Plausibly Allege a Duty (Count II). ................................................................................... 23

      D.      Plaintiffs Fail To Allege Any Implied Contract Much Less a Breach of an Implied Contract (Count III). ............................................. 25

      E.      Plaintiffs Fail To State a Claim for Unjust Enrichment because They Cannot Show that a Benefit Was Conferred or Unjust Conduct (Count IV). ................................................................... 28

      F.      Plaintiffs Fail to Adequately Allege a Cause of Action for Invasion of Privacy – Intrusion Upon Seclusion (Count V)................................. 31

V.      CONCLUSION................................................................................ 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ables v. Brooks Bros. Grp., Inc.*,
  2018 WL 8806667 (C.D. Cal. June 7, 2018) .........................................................14

*Abraham v. T. Henry Constr., Inc.*,
  350 Or. 29, 249 P.3d 534 (2011) ........................................................................24

*Acosta v. Scott Labor LLC*,
  377 F. Supp. 2d 647 (N.D. Ill. 2005) ..................................................................18

*Alsea Veneer, Inc. v. State*,
  318 Or. 33, 862 P.2d 95 (1993) ..........................................................................30

*Amos v. Brew Dr. Kombucha, LLC*,
  No. 3:19-CV-01663-JR, 2020 WL 9889190 (D. Or. Mar. 23, 2020) ...................20

*Andersen v. Oak View Grp., LLC*,
  No. 2:24-cv-00719-HDV-JPR, 2024 WL 5426654 (C.D. Cal. Nov. 22, 2024) ...............16, 18

*Auer v. TransUnion, LLC*,
  902 F.3d 873 (8th Cir. 2018) ..............................................................................8

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ..............................................................................8

*Baton v. Ledger SAS*,
  740 F. Supp. 3d 847 (N.D. Cal. 2024) ..............................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................19, 20

*BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*,
  614 F. Supp. 3d 838 (D. Or. 2022) ....................................................................29, 30

*Busse v. Motorola, Inc.*,
  351 Ill. App. 3d 67, 813 N.E.2d 1013 (2004) .....................................................18

*Carlsen v. GameStop, Inc.*,
  112 F. Supp. 3d 855 (D. Minn. 2015)..................................................................13

*Carrico v. City & Cnty. of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ............................................................................6

150255047.1 0084947-00001

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009) .................................................................12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...............................................................................................8

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) .................................................................................8, 10, 11

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
    No. 15-cv-01125-MJR, 2017 WL 1551330 (S.D. Ill. May 1, 2017) ....................26

*Conway v. PacRes Univ.*,
    324 Or. 231, 924 P.2d 818 (1996) ......................................................................21

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) ............................................................................20

*Cron v. Zimmer*,
    255 Or. App. 114, 296 P.3d 567 (2013)..............................................................28

*CRS Recovery, Inc. v. Laxton*,
    600 F.3d 1138 (9th Cir. 2010) ............................................................................20

*Darnell v. Wyndham Cap. Mortg., Inc.*,
    No. 3:20-CV-00690-FDW-DSC, 2021 WL 1124792 (W.D.N.C. Mar. 24,
    2021) .....................................................................................................................8

*Deaconess Assocs., Inc. v. Wells Fargo Bank, N.A.*,
    No. 3:21-CV-01854-YY, 2022 WL 7690568 (D. Or. Sept. 19, 2022) ..................23

*Deckard v. Bunch*,
    358 Or. 754, 370 P.3d 478 (2016) .................................................................23, 24

*Dep't of Lab. v. McConnell*,
    305 Ga. 812, 828 S.E.2d 352 (2019)...................................................................18

*Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n*,
    281 Or. 533, 577 P.2d 477 (1978) ......................................................................29

*Doe v. Or. State Univ.*,
    614 F. Supp. 3d 847 (D. Or. 2022) .....................................................................26

*Durgan v. U-Haul Intn'l Inc.*,
    No. CV-22-01556-PHX-MTL, 2023 WL 7114622 (D. Ariz. Oct. 27, 2023)...........9

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................13

iii

*Feins v. Goldwater Bank NA*,
No. CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9, 2022) ...........................27

*Fleshman v. Wells Fargo Bank, N.A.*,
27 F. Supp. 3d 1127 (D. Or. 2014) ..............................................................................23, 24, 25

*In re Ford Tailgate Litig.*,
No. 11–CV–2953–RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ................................30

*Gardiner v. Walmart, Inc.*,
No. 20-cv-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) ................................14

*Gardner v. Health Net, Inc.*,
No. CV 10-2140 PA, 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ................................27

*Gattman v. Favro*,
306 Or. 11, 757 P.2d 402 (1988) .........................................................................................24

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................................19

*Gordon v. Chipotle Mexican Grill, Inc.*,
344 F. Supp. 3d 1231 (D. Colo. 2018) .................................................................................29

*Gross v. Chapman*,
475 F. Supp. 3d 858 (N.D. Ill. 2020) ...................................................................................18

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ...............................................................................................28

*Humphers v. First Interstate Bank of Or.*,
298 Or. 706, 696 P.2d 527 (1985) .......................................................................................16

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .........................................................................7, 8, 12

*In re Intel Corp. CPU Mktg., Sales Practices and Prods. Liability Litig.*,
614 F. Supp. 3d 783 (D. Or. 2022) .........................................................................................2

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................................17, 19

*In re iPhone Application Litig.*,
No. 11–MD–02250–LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...........................15

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Sup. 3d 1064 (N.D. Ill. 2016) ...................................................................................29

iv

*Jackson v. Loews Hotels, Inc.*,
   No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) .......................12, 14

*Johnson v. Yuma Reg'l Med. Ctr.*,
   769 F. Supp. 3d 936 (D. Ariz. 2024) ....................................................................................25

*K.L. v. Legacy Health*,
   No. 3:23-cv-1885-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ...................................16, 28

*Karimi v. Golden Gate Sch. of Law*,
   361 F. Supp. 3d 956 (N.D. Cal. 2019) ..................................................................................18

*Kelly v. Ringler Assocs. Inc.*,
   No. 3:14-CV-00604-YY, 2017 WL 1363338 (D. Or. Feb. 21, 2017) ....................................20

*Kendoll v. Oregon*,
   No. 3:24-CV-00330-AN, 2025 WL 975188 (D. Or. Mar. 31, 2025)......................................24

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .................................................................................................2

*Knievel v. ESPN*,
   393 F.3d 1068, 1076 (9th Cir. 2005) .....................................................................................3

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310, 246 P.3d 877 (2011) ..................................................................................14

*Kylie S v. Pearson PLC*,
   475 F. Supp. 3d 841 (N.D. Ill. 2020) .....................................................................................9

*Larisa's Home Care, LLC v. Nichols-Shields*,
   362 Or. 115, 404 P.3d 912 (2017) ........................................................................................29

*Lazy Y Ranch LTD v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ................................................................................................20

*Leonard v. McMenamins Inc.*,
   No. 2:22-cv-00094-BJR, 2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ...........................11

*Logan v. Marker Grp., Inc.*,
   No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) ......................................28

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................................19

*Lowe v. Philip Morris USA, Inc.*,
   344 Or. 403, 183 P.3d 181 (2008) ........................................................................................21

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ..................................................................6, 8

*Maddox v. Bank of NY Mellon Tr. Co.*,
    19 F.4th 58 (2d Cir 2021) ...............................................................11

*Magenis v. Fisher Broadcasting*,
    103 Or. App. 555, 798 P.2d 1106 (1990).................................................19

*Mauri v. Smith*,
    324 Or. 476, 929 P.2d 307 (1996) ...........................................16, 17, 18

*In re MCG Health Data Sec. Issue Litig.*,
    No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 (W.D. Wash. Mar. 27,
    2023) ..................................................................................29

*Medici v. JP Morgan Chase Bank, N.A.*,
    No. 3:11-CV-00959-HA, 2014 WL 199232 (D. Or. Jan. 15, 2014).........................22

*Moody v. Or. Cmty. Credit Union*,
    371 Or. 772, 542 P.3d 24 (2023) .......................................................24

*Paul v. Providence Health Sys.-Oregon*,
    237 Or. App. 584, 240 P.3d 1110 (2010).........................................21, 22, 23

*Payne v. Off. of the Commr. of Baseball*,
    705 F. App'x. 654 (9th Cir. 2017) .....................................................11

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88, 361 P.3d 3 (2015) .........................................................12

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) ..............................................29, 30

*Perez-Denison v. Kaiser Found. Health Plan of the Nw.*,
    868 F. Supp. 2d 1065 (D. Or. 2012) ...................................................16

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) .....................................................13

*Ramirez v. Paradies Shops, LLC*,
    69 F.4th 1213 (11th Cir. 2023) .......................................................26

*Razuki v. Caliber Home Loans, Inc.*,
    No. CV 17-1718-LAB, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018)........................13

*Roe v. Amgen Inc.*,
  Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5,
  2024) .................................................................................................................. 13

*RoHillCo Bus. Servs. LLC v. JPMorgan Chase Bank, N.A.*,
  No. 3:15-CV-02270-SB, 2016 WL 4051296 (D. Or. June 24, 2016) ..................................... 23

*In re Samsung Data Sec. Breach Litig*,
  No. 1:23-md-03055, 2025 WL 271059 (D.N.J. Jan. 3, 2025) ................................................ 9

*Schmitt v. SN Servicing Corp.*,
  No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ................................ 17

*Schoene v. Spirit Airlines, Inc.*,
  726 F. Supp. 3d 1248 (D. Or. 2024) ........................................................................... 20, 26

*Scovill v. City of Astoria*,
  324 Or. 159, 921 P.2d 1312 (1996) ...................................................................................... 24

*Shelby Advocs. for Valid Elections v. Hargett*,
  947 F.3d 977 (6th Cir. 2020) ................................................................................................ 11

*Shulman v. Group W Prods., Inc.*,
  18 Cal. 4th 200, 955 P.2d 469 (1998) ................................................................................... 17

*Slover v. Or. State Bd. of Clinical Soc. Workers*,
  144 Or. App 565, 927 P.2d 1098 (1996) ............................................................................... 25

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................................... 5, 6

*Staley v. Taylor*,
  165 Or. App. 256, 994 P.2d 1220 (2000) ........................................................................ 25, 26

*Stanley v. Univ. of S. Cal.*,
  178 F.3d 1069 (9th Cir. 1999) .............................................................................................. 26

*Stasi v. Inmediata Health Grp. Corp.*,
  No. 19cv2353 JM (LL), 2020 WL 2126317 (S.D. Cal. May 5, 2020) ................................. 10

*Steinle v. City & Cnty. of San Francisco*,
  919 F.3d 1154 (9th Cir. 2019) ................................................................................................ 2

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) ................................................................................................ 30

*Svenson v. Google Inc.*,
  No. 13-cv-4080 (BLF), 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ................................ 12

150255047.1 0084947-00001

*Swenson v. Legacy Health Sys.*,
169 Or. App. 546, 9 P.3d 145 (2000) ............................................................28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..........................................................................6, 7, 8, 15

*Travis v. Assured Imaging LLC*,
No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10, 2021) ........................11

*Veridian Credit Union v. Eddie Bauer*,
LLC, 295 F. Supp. 3d 1140 (W.D. Wash. 2017) ...................................................25

*Westrope v. Ringler Assocs., Inc.*,
No. 3:14-CV-00604-YY, 2017 WL 1386012 (D. Or. Apr. 11, 2017) .................................20

*Willingham v. Glob. Payments, Inc.*,
No. 1:12-CV-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) .....................................27

*Winzig v. Stockpile Invs., Inc.*,
No. 2:21-cv-02170-RGK-E, 2021 WL 4812956 (C.D. Cal. July 2, 2021) ...........................11

*Yi v. Circle K Stores*,
Inc., 258 F. Supp. 3d 1075 (C.D. Cal. 2017) ....................................................27

*Young v. Facebook, Inc.*,
790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..........................................................26

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015) .............................................................15

*Zehr v. Haugen*,
318 Or. 647, 871 P.2d 1006 (1994) .............................................................20

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. .........................................6, 25

Federal Trade Commission Act, 15 U.S.C. § 45 ...............................................24, 25

Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801–6827 ...............................................3, 25

Or. Rev. Stat. §§ 15.300–460 ..................................................................20

Or. Rev. Stat. §§ 15.300–80 ...................................................................20

Or. Rev. Stat. § 15.380 .......................................................................20

Or. Rev. Stat. §§ 15.400–60 ...................................................................20

150255047.1 0084947-00001

Or. Rev. Stat. § 15.430.................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)...............................................................................................19

Fed. R. Civ. P. 12(b)(1).........................................................................................1, 5

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 19, 20

U.S. Const. art. III ........................................................................................... *passim*

150255047.1 0084947-00001

## LOCAL RULE 7-2(a) CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7-1(a), the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.

## MOTION

Defendant Pacific Residential Mortgage, LLC ("PacRes"), through its undersigned counsel, moves to dismiss the Consolidated Class Action Complaint, (ECF No. 10), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). For the reasons set forth in PacRes' Memorandum of Law in Support of Its Motion to Dismiss, which is incorporated herein, this Court should dismiss the Consolidated Class Action Complaint, (ECF No. 10), with prejudice and grant PacRes any further relief deemed necessary and proper.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

The Court should dismiss Plaintiffs' case for two reasons. First, Plaintiffs Stephanie Tabibian, Tihomil Kraker, Alexander Cnossen, and Jerri Hopewell ("Plaintiffs") lack Article III standing because they have not alleged a concrete injury. Rather, they advance a series of claims seeking to capitalize on a criminal intrusion—a ransomware lockdown—into PacRes' computer systems. But they allege no facts to support any *actual* harm caused by the ransomware lockdown. Instead, Plaintiffs base their purported injuries on the *speculation of potential future harm*—i.e., increased risk of future fraud or identity theft, anxiety about the loss of privacy, and time spent mitigating potential future losses. As recognized by courts in a host of prior data breach cases, such allegations are insufficient to demonstrate standing under Article III.

Second, each of the claims fail because Plaintiffs do not adequately allege one or more *prima facie* element of it.

## II.    RELEVANT ALLEGATIONS

This consolidated action arises from a February 10, 2025, ransomware lockdown carried out by cybercriminals that affected "some of [PacRes'] systems." (Consolidated Class Action Complaint, (ECF No. 10), ("Complaint" or "Compl.") ¶ 34.) PacRes is a mortgage financing company. (*Id*. ¶ 28.) Plaintiffs claim that they and other similarly situated class members are "current and former customers of [PacRes]." (*Id.* ¶ 29.)

Upon learning of the incident, PacRes promptly hired a cybersecurity firm to secure its systems and to conduct an investigation to determine the nature and the impact of the incident. (*Id.* ¶ 34.) PacRes also promptly informed law enforcement and was able to quickly recover the affected systems. (*Id.*) Based on the results of the forensic investigation, PacRes conducted a review of the information that the cybercriminals accessed within the compromised systems. (*Id.*)

On March 25, 2025, PacRes provided notice (the "Notice") to the "potentially affected individuals" informing them that certain personal identifying information ("PII") such as names, dates of birth, financial account information, addresses and Social Security numbers "*may have been* impacted or accessible." (*Id*. (emphasis added*).*) In response to the breach, PacRes provided the potentially affected individuals, including Plaintiffs, with complimentary Single Bureau Credit Monitoring services for twelve months, in addition to "proactive fraud assistance" through "Cyberscout, a TransUnion company specializing in fraud assistance and remediation services." (*Id.* ¶ 3, n.1 (link to PacRes's data breach notice).)[1] Plaintiffs rejected these measures claiming

---

[1] Pursuant to the doctrine of incorporation-by-reference, in evaluating a motion to dismiss, the Court may properly consider extrinsic documents that are referred to "extensively" by the Complaint or "form[] the basis of" Plaintiffs' claims. *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162–63 (9th Cir. 2019). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also In re Intel Corp. CPU Mktg., Sales Practices and Prods. Liability Litig.*, 614 F. Supp. 3d 783, 792 (D. Or.

150255047.1 0084947-00001

they were burdensome because they required Plaintiffs "to spend time enrolling in the service[s]." (*Id.* ¶ 166.)

Instead, Plaintiffs brought five causes of action against PacRes on the theory that they face some indeterminate "risk" of identity theft in the future. (*Id.* ¶ 124.) At the heart of the Complaint, Plaintiffs allege that their PII was accessed by cybercriminals due to PacRes' failure to protect their PII and to follow industry standards, FTC standards, and rules under the Gramm-Leach-Bliley Act ("GLBA"). (*Id.* ¶¶ 45–56, 97–123.) Specifically, Plaintiffs accuse PacRes of "failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiffs and Class Members with prompt and accurate notice of the Data Breach." (*Id.* ¶ 12.) Plaintiffs allege, in a conclusory fashion, that since the ransomware attack occurred, PacRes must have been responsible for it (*id.* ¶¶ 259, 272, 295) because it acted "intentionally, willfully, recklessly, or negligently" (*id.* ¶ 12).

But PacRes' privacy policy, which Plaintiffs incorporated in the Complaint, states that PacRes "implement[s] security measures that comply with applicable federal laws and regulations. These measures include advanced computer safeguards, secure filing systems, and restricted access to physical locations to ensure the protection of your information." (*Id.* ¶ 32, n.2.)[2] Moreover, Plaintiffs repeatedly acknowledge that the data breach "was the work of cybercriminals" and that the criminal "Lynx hacker group targeted and stole [their PII.]" (*E.g.*, *id.*

---

2022). The Court may consider these documents without converting the motion to dismiss into one for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (court may consider documents on motion to dismiss "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (internal quotations omitted). Here, Plaintiffs repeatedly refer to the Notice (*e.g.*, Compl. ¶¶ 36, 39, 140–42, 164–65, 177–78, 190–91, 203–04 & at 33, n.43 & 44), quote extensively from it (*id.* ¶¶ 34, 140), and even include hyperlinks to it (*id.* at 7, n.3 & n.4).

[2] Privacy Policy (https://pacresmortgage.com/privacy-policy) (cited in Compl. ¶ 32, n.2).

¶¶ 38–40.) According to Plaintiffs, Lynx published one of their PII on a dark web leak site, which was viewed 2,981 times. (*Id.* ¶ 42.)

More notable, however, is what Plaintiffs do *not* allege. Plaintiffs do not allege that any Plaintiff has been the victim of identity theft. Plaintiffs allege no facts indicating that their PII *was* actually accessed by any unknown third party. Nor do Plaintiffs allege facts indicating any unknown third party acquired any of the PII as a result. Plaintiffs allege no facts that they incurred any out-of-pocket expenses for monitoring services—to the contrary, they admit they rejected free services offered by PacRes. (*Id.* ¶ 166.) Plaintiffs do not allege that they had to pay for any fraudulent credit or debit card charges, or that their names were used without authorization to open a line of credit or account as a result of the intrusion. At most, Plaintiffs allege that their identities are "at risk" (*id.* ¶ 13); that they are at "heightened and imminent risk of fraud and identity theft" (*id.* ¶ 15); that they "*will* incur out-of-pocket costs for purchasing credit monitoring services . . . to deter and detect identify theft" (*id.* ¶ 16) (emphasis added); that criminals could use data "to commit further [unidentified and future] crimes" (*id.* ¶ 40); and that the fraudulent activity "may not come to light for years" (*id.* ¶ 95). They thus speculate that their PII "can be sold" because this type of information "can" be used to criminal ends. (*Id.* ¶¶ 77, 133–38.)

Plaintiffs allege in a conclusory fashion that they have been injured as a result of the data breach. Each Plaintiff states that he/she received "increased spam calls, texts, and/or emails" which "on information and belief, were caused by the Data Breach." (*Id.* ¶¶ 170, 183, 196, 209.) Each Plaintiff also claims identical "fear, anxiety and stress" (*id.* ¶¶ 171, 184, 197, 210), that they anticipate spending considerable time and money to mitigate any resulting harm from the data breach (notwithstanding PacRes' offer of free credit monitoring and proactive fraud assistance services) (*id.* ¶¶ 172, 185, 198, 211), and "a continuing heightened risk of identity theft and fraud

for years to come" (*id.* ¶¶ 173, 186, 199, 212). Plaintiffs also allege a variety of overlapping general injuries including unsupported claims of "(a) invasion of privacy; (b) theft and misuse of their PII; (c) lost or diminished value of their PII; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the data breach; (e) loss of the benefit of the bargain; (f) increased spam calls, texts, and/or emails; and (g) the continued and certainly increased risk to their PII." (*Id.* ¶ 8; *see also* ¶ 124.)

On April 4, 2025, Tabibian filed the first putative class action against PacRes. (ECF No. 1.) Since then, the Court consolidated several additional putative class actions with Tabibian's case. (ECF No. 7.) On May 28, 2025, Plaintiffs filed the instant Complaint. (ECF No. 10.)

Plaintiffs assert five causes of action against PacRes: (1) negligence (Compl. ¶¶ 230–64), (2) negligence *per se* (*id*. ¶¶ 265–79), (3) breach of implied contract (*id*. ¶¶ 280–99), (4) unjust enrichment (*id*. ¶¶ 300–12), and (5) "invasion of privacy – intrusion upon seclusion" (*id*. ¶¶ 313–23). For the reasons that follow, this Court should dismiss the Complaint in its entirety.

## III.    RULE 12(B)(1): PLAINTIFFS LACK STANDING FOR THEIR CLAIMS.

The Complaint should be dismissed under Rule 12(b)(1) for lack of standing. Any plaintiff seeking to invoke the jurisdiction of the federal courts must satisfy the standing requirements of Article III of the U.S. Constitution for purposes of establishing subject matter jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024). "[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Baton*, 740 F. Supp. 3d at 872. These three elements are referred to as injury-in-fact, causation, and redressability. And plaintiffs have the burden of establishing them by "clearly . . . alleg[ing] facts demonstrating each element." *Id.* (quoting *Spokeo*, 578 U.S. at 338). Conclusory

allegations are insufficient to establish standing. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011).

"Injury-in-fact requires an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Baton*, 740 F. Supp. 3d at 873 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)) (citation modified). In the context of a class action, named plaintiffs must show that they have been injured personally, not that other unidentified class members have been injured. *Id.* (citing *Spokeo*, 578 U.S. at 338). As shown below, Plaintiffs fail to meet any of these standards.

Plaintiffs have not alleged a concrete injury. Nor do they allege an actual or imminent injury. Plaintiffs do not and cannot allege that they have been victims of identity theft. Plaintiffs merely allege that they face *a risk* of identity theft that somehow "has materialized and is imminent." (Compl. ¶ 124.) But Plaintiffs' other allegations make clear that the risk is nowhere close to being materialized or sufficiently imminent to convey standing. Indeed, Plaintiffs state that "[t]he fraudulent activity resulting from the Data Breach may not come to light for years" (*id.* ¶¶ 95, 153), "Plaintiffs . . . are at an increased risk of fraud and identity theft for many years into the future" (*id.* ¶ 159), and Plaintiffs face a "heightened risk of identity theft and fraud for years to come" (*id.* ¶¶ 173, 186, 199, 212). Having only alleged a *risk* of injuries, Plaintiffs fall back on an assortment of speculative "harms" to justify standing that federal courts have consistently declined to recognize.

### A.    Plaintiffs' Allegations Based on the Risk of Future Identity Theft Do Not Support Standing in an Action for Damages or Injunctive Relief.

In *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437–38 (2021), the Supreme Court held that that the threat of identity theft posed by a data breach, without more, does not constitute an injury-in-fact in an action for damages. There, the plaintiffs alleged that TransUnion violated the Fair

Credit Reporting Act by adding inaccurate alerts to their credit files. *Id.* at 417, 430–34. For most class members, the affected credit files were not shared with third parties. *Id.* at 417. The plaintiffs nonetheless sought to proceed on a class-wide basis, arguing that all class members suffered a concrete injury because the "misleading . . . alerts in their internal credit files exposed them to a *material risk* that the information would be disseminated in the future." *Id.* at 435 (emphasis added). The Supreme Court disagreed, holding that the plaintiffs only have standing to assert a claim for damages once "the risk of future harm materializes and the individual suffers a concrete harm." *Id.* at 436. Because the majority of class members "did not demonstrate that the risk of future harm materialized"—*i.e.*, that their credit files "were ever provided to third parties or caused a denial of credit"—they lacked standing to pursue claims. *Id.* at 437. Likewise, in the data breach context, the "mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022) (applying *TransUnion* and dismissing complaint for lack of standing when the plaintiffs did not allege "any actual identify theft or fraud").

Here, Plaintiffs have not alleged an injury-in-fact—an actual identity theft or fraudulent activity. Nor can they. Instead, Plaintiffs merely allege that they face "a heightened and imminent risk of fraud and identity theft" as a result of the data breach. (Compl. ¶¶ 15, 173, 186, 199, 212.) But, as in *TransUnion* and *Zynga*, Plaintiffs' allegations do not establish any present, concrete harm because Plaintiffs do not allege that any of their PII was actually accessed by an unauthorized actor, much less that any harm came to them as a result. Plaintiffs rely solely on speculation that such harm might occur in the future—*e.g.*, "[t]he fraudulent activity resulting from the Data Breach may not come to light for years." (*Id.* ¶¶ 95, 153.) Likewise, Plaintiffs allege that their PII "can be sold" because this type of information "can" be used to criminal ends. (*Id.* ¶¶ 77, 133–38.)

7

Plaintiffs have not alleged "that the risk of future harm materialized" and thus lack standing to pursue their claims. *See TransUnion*, 594 U.S. at 436–37; *Zynga, Inc.*, 600 F. Supp. 3d at 1051; *see also Auer v. TransUnion, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) (allegations that defendant "kept [plaintiff's] consumer information in 'unsecure locations,' where it was supposedly accessible to 'unauthorized persons' [did not by themselves] establish an 'actual' or 'certainly impending' injury'") (internal quotations omitted).

Nor do Plaintiffs' allegations establish standing for injunctive relief. Under *TransUnion*, Plaintiffs must allege a "material risk of future harm" that is "sufficiently *imminent* and substantial." 594 U.S. at 435 (emphasis added); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (standing inquiry for injunctive relief requires plaintiffs to "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way." (quoting *Lujan*, 504 U.S. at 560, and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))). And a threatened injury cannot be premised on a "highly attenuated chain of possibilities" to justify an injunction. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013).

At most, Plaintiffs' allegations suggest yet again a hypothetical *risk* that an unauthorized actor *could in the future* use their information to perpetrate crimes of some type. They fail to credibly allege an imminent risk of harm. In fact, Plaintiffs claim they face a "risk of identity theft and fraud for years to come" without explaining how it is imminent. (Compl. ¶¶ 95, 173, 186, 199, 212.) Indeed, "[i]f what Plaintiff[s] allege[] is true, and fraudulent activity may not occur for *years*, it is impossible for [them] to be at imminent risk of harm." *Darnell v. Wyndham Cap. Mortg., Inc.*, No. 3:20-CV-00690-FDW-DSC, 2021 WL 1124792, at *7 (W.D.N.C. Mar. 24, 2021) (emphasis in original) (dismissing complaint against mortgage provider for claims regarding alleged failure to

secure personally identifying information for lack of standing due to insufficiently alleging injury-in-fact).

Plaintiffs' risks of injury is no less remote even assuming that social security numbers were allegedly involved, absent allegations that an unknown third party actually misused such data. Rather, Plaintiffs allege "a highly attenuated chain of possibilities" that their PII was published on the dark web for "unknown and nefarious actors" to use in future crimes. (Compl. ¶¶ 7, 125, 133–38.) Plaintiffs also speculate that criminals could also cross-reference certain PII to "assemble complete dossiers on individuals." (*Id.* ¶ 134.) But the alleged "methods" by which unidentified future criminals might use their PII require a series of unfortunate and unlikely events to occur for Plaintiffs to be targeted. (*E.g.*, *id.* ¶¶ 133–38 ("linking unregulated data with stolen data to assemble complete dossiers," requires the existence of criminals that would create "Fullz packages" and then sell them "at a higher price to unscrupulous operators and criminals (such as [unidentified] illegal and scam telemarketers)," and that packages "can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers)").)

Such hypothetical risks are insufficient to establish standing. *See, e.g.*, *Durgan v. U-Haul Intn'l Inc.*, No. CV-22-01556-PHX-MTL, 2023 WL 7114622, at *2 (D. Ariz. Oct. 27, 2023) (rejecting claim that "the hackers may then develop 'Fullz' packages, which consist of bits and pieces of compromised PII" as "insufficient to demonstrate *imminent* harm" and dismissing claims of negligence and breach of implied contract) (emphasis in original); *Kylie S v. Pearson PLC*, 475 F. Supp. 3d 841, 847 (N.D. Ill. 2020) (holding "any theory" that stolen data "would facilitate social engineering depends on a highly attenuated chain of possibilities that does not satisfy Article III" and dismissing claims of negligence, negligence *per se*, breach of contract, breach of implied contract, and unjust enrichment for lack of standing (citation modified)); *In re Samsung Data Sec.*

*Breach Litig*, No. 1:23-md-03055, 2025 WL 271059, at *9 (D.N.J. Jan. 3, 2025) (same, dismissing claims of negligence, negligence *per se*, breach of contract, breach of implied contract, unjust enrichment, and declaratory judgment and rejecting arguments that allegations of potential "social engineering" or "SIM swapping" by hackers could create Article III standing, because they involve a "long sequence of uncertain contingencies involving multiple independent actors" and "[b]ecause there is no imminent risk of identity theft or fraud, Plaintiffs' other theories of injury—incurred costs associated with prophylactic measures, diminished value of PII, lost benefit of the bargain, and emotional distress—alone cannot maintain a cause of action"). Because Plaintiffs offer no factual allegations to suggest any credible future risk, let alone an imminent risk that their data will be misused, they fail to establish a basis for injunctive relief.

### B. Plaintiffs' Allegations of Mitigation Efforts, "Stress," Loss of Value of PII, and Benefit of the Bargain Cannot Establish Standing.

Plaintiffs cannot rely on their allegations that they may face future expenses for credit monitoring or that they spent time monitoring their accounts as the basis for an injury-in-fact. (*See* Compl. ¶¶ 139–45; 157–60.) First, none of the Plaintiffs claim they actually spent any money on monitoring services. This is because they cannot do so—as they admit, PacRes offered them *free* monitoring services, which they rejected as too burdensome because it would require "them to spend time enrolling in [such] services." (*Id*. ¶ 166.) Of course, any monitoring service requires enrollment. In any event, such allegations should be rejected. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Therefore, "for standing purposes, the risk of future identity theft, and the related mitigation costs, are injuries that rise and fall together." *Stasi v. Inmediata Health Grp. Corp.*, No. 19cv2353 JM (LL), 2020 WL 2126317, at *9 (S.D. Cal. May 5, 2020) (dismissing complaint for lack of standing that alleged, in part, claims of negligence,

negligence *per se*, and breach of contract). "[When] the risk of identity theft is not an injury-in-fact [as in the instant case], costs associated with the perceived risk cannot be an injury-in-fact in themselves." *Winzig v. Stockpile Invs., Inc.*, No. 2:21-cv-02170-RGK-E, 2021 WL 4812956, at *3 (C.D. Cal. July 2, 2021) (dismissing for lack of standing complaint that alleged, in part, negligence, breach of contract, and breach of implied contract in connection with data breach). Plaintiffs' theory of mitigation costs does not confer standing.

Likewise, Plaintiffs' conclusory allegations of "fear, anxiety and stress" (Compl. ¶¶ 171–72, 184–85, 197–98, 210–11) from the same hypothetical, non-imminent risk are insufficient to confer standing. *See Clapper*, 568 U.S. at 415–16, 422; *see also Payne v. Off. of the Commr. of Baseball*, 705 F. App'x. 654, 655 (9th Cir. 2017) (rejecting allegations of "general anxiety" as a basis for standing where anxiety was based on future harm that was not certainly impending); *Travis v. Assured Imaging LLC,* No. CV-20-00390-TUC-JCH, 2021 WL 1862446, at *10 (D. Ariz. May 10, 2021) (rejecting allegations of "emotional distress" and "anxiety" as basis for standing in a data breach case and dismissing complaint for failing to allege injury in fact); *Leonard v. McMenamins Inc.*, No. 2:22-cv-00094-BJR, 2022 WL 4017674 at *4 (W.D. Wash. Sept. 2, 2022) ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." (quoting *Maddox v. Bank of NY Mellon Tr. Co.*, 19 F.4th 58, 66 (2d Cir 2021))). Indeed, if Plaintiffs could establish standing merely by asserting stress about any future risk, no matter how speculative, *TransUnion's* core holding—and the fundamental requirements of Article III standing—would be far too easy to evade. *See Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 983 (6th Cir. 2020) (allowing plaintiffs to "bootstrap their way into standing" based on "fears of hypothetical future harm" would "eviscerate the Article III standing imperative" (citations omitted)).

Plaintiffs fare no better with their allegations about "increased spam calls, texts, and/or emails." (Compl. ¶¶ 170, 183, 196, 209.) Merely "receiving spam or mass mail does not constitute an injury in fact." *See Zynga*, 600 F. Supp. 3d at 1051 (collecting cases and concluding "the Court agrees with other courts that 'receiving spam or mass mail does not constitute an injury in fact'"); *Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (same); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself . . . does not constitute a sufficient injury entitling [the plaintiff] to compensable relief."). Such an allegation merely establishes "*attempts* to commit identify theft," not actual "independent injuries." *Zynga*, 600 F. Supp. 3d at 1052 (emphasis in original.). At most, such allegations point to a hypothetical risk of *future* injury from the remote possibility—one Plaintiffs do not even allege—that they might one day fall for a phishing scam.[3]

Plaintiffs' reliance on the alleged diminution in value of PII likewise cannot establish standing. Plaintiffs allege that their personal information is "a valuable property right" and "as a result of the Data Breach" their PII "has been damaged and diminished." (Compl. ¶¶ 146, 151.) But to establish standing under a "diminished value" theory, Plaintiffs must allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Zynga*, 600 F. Supp. 3d at 1054 (quoting *Svenson v. Google Inc.*, No. 13-cv-4080 (BLF), 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)); *see Pearson v. Philip Morris, Inc.*, 358 Or. 88, 123-24, 361 P.3d 3 (2015) (noting that, under Oregon law, a consumer suffers "diminished value" only (1) "when the [consumer] later resells the [relevant] good" for less money than it is worth, or (2) "having paid too much [for that good] at the time of purchase"). In

---

[3] Notably, unsolicited communications—including emails, texts, and calls—are commonplace. As Plaintiffs acknowledge, they received such communications before the data incursion as well. (*See* Compl. ¶¶ 170, 183, 196, 209 (alleging Plaintiffs experienced "increased" communications).)

*Pruchnicki v. Envision Healthcare Corp.,* the Ninth Circuit affirmed the district court's finding that the plaintiff's allegations of diminution of value of personal information were insufficient to establish the damages element for her claims. 845 F. App'x 613, 614–15 (9th Cir. 2021). The Ninth Circuit explained that although the plaintiff cited studies establishing personal information may have value in general, the plaintiff "failed to adequately allege that *her* personal information actually lost value." *Id*. (emphasis in original).

Here, too, Plaintiffs do not claim that they ever intended to participate in any market—they do not claim that they planned to sell their data, that they had willing buyers, or that those buyers would now pay less as a result of the data breach. As such, Plaintiffs' "economic-loss theory is therefore purely hypothetical and does not give rise to standing." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (no standing where plaintiffs failed to "plausibly allege that someone else would have bought [their non-disclosed personal information] as a standalone product"); *see Roe v. Amgen Inc.*, Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024) ("[V]ague allegations that personal information . . . has monetary value" were insufficient to allege injury, where plaintiff identified no "actual loss of money or property"); *Razuki v. Caliber Home Loans, Inc.*, No. CV 17-1718-LAB (WVGx), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (allegations of damages based on diminution of value of personal data insufficient where plaintiff failed to allege enough facts to establish how his personal information was less valuable as a result of the breach); *see also Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 862 (D. Minn. 2015) (dismissing complaint and concluding there was no standing for unjust enrichment claim where plaintiff did not show he "bargain[ed] for data privacy/security").

Similarly, Plaintiffs' benefit of the bargain theory fails to establish standing. Courts generally recognize under the "benefit of the bargain" theory "that plaintiffs have suffered a financial injury when they purchase a product in reliance on a false representation about the product's value, and allege that they would not have made the purchase, or would not have paid as much as they did, had they known the truth." *See, e.g.*, *Jackson*, 2019 WL 6721637, at *1 (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332, 246 P.3d 877 (2011)). Plaintiffs unsuccessfully attempt to conform their allegations to these requirements. Plaintiffs allege that PacRes' "poor data security practices deprived Plaintiffs and Class Members of the benefit of the bargain . . . [when they] understood and expected that they were, in part, paying for the product or service and the necessary security measures to protect their PII." (Compl. ¶ 161.) Plaintiffs, however, fail to allege any misrepresentations made by PacRes "upon which [plaintiffs] relied before handing over [their] personal information." *Jackson*, 2019 WL 6721637 at *1. And none of the Plaintiffs allege that they actually read or relied upon any purported misrepresentations about PacRes' data security practices in connection with their mortgage applications. To the extent that Plaintiffs purport to rely on the existence of PacRes' data privacy policy, the privacy policy says nothing about pricing, much less that PacRes actually charged Plaintiffs for data protection. *See Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021) (dismissing complaint when similar allegation was insufficient to support the benefit of the bargain theory); *Ables v. Brooks Bros. Grp., Inc.*, 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018) ("This theory of [benefit of the bargain] standing is cognizable only where a consumer purchases defective or falsely advertised products, or—in the data breach context—in the presence of a security agreement concerning consumer data or some other representation that the cost of

security is subsumed within the cost of goods."). As such, Plaintiffs' benefit of the bargain standing theory fails as a matter of law.

### C.  Plaintiffs Have Not Alleged a "Privacy" Injury Sufficient to Establish Standing.

Unable to plausibly plead that the data breach has led to any actual theft of their identities or financial loss, Plaintiffs attempt to characterize the data breach itself as an "invasion of privacy." (*E.g.*, Compl. ¶ 124.) Plaintiffs contend that the mere fact an unauthorized third party may have accessed their information is, by itself, a "privacy" harm, regardless of whether any tangible injury occurred as a result of the exposure. Not so. Courts in the Ninth Circuit and elsewhere reject the argument that a loss of privacy standing alone establishes Article III standing. *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Plaintiffs do not claim that they have suffered any damages due to a loss of privacy, and so the Court finds that this theory is insufficient to establish standing."); *In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs have not identified a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact.").

Moreover, *TransUnion* makes clear that intangible harms such as invasions of privacy can only be sufficiently "concrete" for Article III standing where they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 594 U.S. at 425. To show a "close relationship" between a claimed intangible harm and a traditionally cognizable harm, a plaintiff must demonstrate that the necessary components of the analogous and cognizable cause of action exist. *See id.* at 424–25. The Supreme Court held that the *TransUnion* plaintiffs whose inaccurate credit files had not been disseminated could not establish standing by reference to the traditional tort of defamation, because publication (*i.e.,* dissemination) was "essential to liability" in a suit for defamation. *Id.* at 433–35 (quoting Restatement of Torts § 577).

15

Here, Plaintiffs invoke the common law tort of "invasion of privacy – intrusion upon seclusion" as the root of their privacy injury. (Compl ¶¶ 7; 313–23.) But they have not pled facts that bear a "close relationship" to the tort. Specifically, Plaintiffs fail to state a cause of action for invasion of privacy—intrusion upon seclusion. Under Oregon law, the tort has three elements: "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiffs' solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Mauri v. Smith*, 324 Or. 476, 483, 929 P.2d 307 (1996). Plaintiffs failed to adequately meet these elements.

The tort requires an intentional intrusion. *See id.* An intrusion "may be by some . . . form of investigation or examination into [Plaintiffs'] private concerns.' *Perez-Denison v. Kaiser Found. Health Plan of the Nw*., 868 F. Supp. 2d 1065, 1090 (D. Or. 2012) (quoting Restatement (Second) of Torts § 652B, cmt. b (1977)). An intrusion occurs only when *the defendant acts* without the plaintiff's permission, consent, or authorization and *is intentional* "if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question." *Mauri*, 324 Or. at 484, 929 P.2d 307. Hence, in data breach cases, Plaintiffs must allege any facts that would suggest that the data breach was an intentional violation of Plaintiffs' and other class members' privacy.

In *K.L. v. Legacy Health*, this Court dismissed the plaintiff's intrusion upon seclusion claim when, as here, the defendant did not "pry into any personal facts" because the allegedly harmful intrusion was accomplished by third parties and not the defendant. No. 3:23-cv-1885-SI, 2024 WL 4794657, at *7 (D. Or. Nov. 14, 2024) (quoting *Humphers v. First Interstate Bank of Or.*, 298 Or. 706, 711, 696 P.2d 527 (1985)); *see also Andersen v. Oak View Grp., LLC*, No. 2:24-cv-00719-HDV-JPR, 2024 WL 5426654, at *4–5 (C.D. Cal. Nov. 22, 2024) (dismissing the plaintiffs' invasion of privacy claim where the plaintiffs relied on allegations that "defendant [was] legally

16

responsible—by intentionally failing to keep Plaintiffs' PII safe"); *Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 3493754, at *7 (N.D. Cal. Aug. 9, 2021) (dismissing invasion of privacy claim and recognizing data breach case did not involve the "*intentional* disclosures of privileged information") (emphasis added); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not approach the standard of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy.").[4]

Likewise here, Plaintiffs fail to allege facts that could show PacRes *intentionally* participated in the data incursion; instead, they rely on conclusory allegations that merely ape the elements of the claim. Plaintiffs' bare allegations state that the "invasion of privacy resulted from [PacRes] intentional failure to secure and maintain Plaintiffs' PII," from "disclosing PII to unauthorized parties for unauthorized use" and because "the decision to implement lax security and failure to notify Plaintiffs and Class Members were willful and intentional." (Compl. ¶¶ 316–18.) Moreover, Plaintiffs contradict their suggestion that PacRes intended the unauthorized PII disclosure with their other allegations that "Lynx cyber-criminals" committed a theft and had "stolen" the PII from PacRes. (*Id.* ¶¶ 4, 6, 8.) This does not amount to an intentional act by PacRes. Plaintiffs have not plausibly alleged that PacRes acted intentionally and thus they cannot establish standing through an invasion of privacy, intrusion upon seclusion claim.

---

[4] The California district court cases applied California law. But decisions under California law are instructive because it closely parallels Oregon law and has the same requirements—albeit, articulated in two elements instead of three. *Compare Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231, 955 P.2d 469, 490 (1998) (elements are: (1) the defendant intentionally intruded into a place, conversation, or matter in which the plaintiff had a reasonable expectation of privacy, and (2) the intrusion was highly offensive to a reasonable person) *with Mauri*, 324 Or. at 483, 929 P.2d 307 ("to establish a claim, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person.").

To establish the second element of the tort, a plaintiff must show the intrusion was upon his/her solitude, seclusion, or private affairs or concerns. *Mauri*, 324 Or. at 485, 929 P.2d 307. Courts within the Ninth Circuit and beyond recognize that, to be actionable, the private information must include "intimate details of plaintiffs lives," *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 980 (N.D. Cal. 2019) (citation modified), such as "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate, personal nature." *Gross v. Chapman*, 475 F. Supp. 3d 858, 862 (N.D. Ill. 2020) (quoting *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005)). None of the information Plaintiffs allege the cybercriminals potentially stole is comparable to such "intimate details" or embarrassing "private matters." *See Andersen*, 2024 WL 5426654, at *5 (dismissing claim because "Plaintiffs have not pointed to any case where courts have sustained invasion of privacy claims for data breach cases solely involving names and social security numbers"); *see also Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72, 813 N.E.2d 1013 (2004) ("[N]ames, telephone numbers, addresses or social security numbers" furnished by customers "have [not] been held to be private facts"); *Dep't of Lab. v. McConnell*, 305 Ga. 812, 817–19, 828 S.E.2d 352 (2019) (rejecting argument that use of social security number supported claim for invasion of privacy). For this second reason, Plaintiffs cannot rely on an invasion of privacy to establish standing.

The final element of this claim is that the intrusion be "highly offensive to a reasonable person." *Mauri*, 324 Or. at 485, 929 P.2d 307; *see also* Restatement (Second) of Torts § 625B, cmt. d ("[t]here is . . . no liability unless the interference with the plaintiff's seclusion is . . . the result of conduct to which the reasonable man would strongly object"). When determining whether a defendant's conduct was highly offensive, courts consider factors including "the extent of the intrusion, the context, conduct and circumstances surrounding the intrusion, the defendant's

motives, the setting into which the defendant intruded and the plaintiff's expectation of privacy." *Magenis v. Fisher Broadcasting*, 103 Or. App. 555, 562, 798 P.2d 1106 (1990). Here, there is no serious invasion of privacy that would be highly offensive to a reasonable person. Courts that have analyzed these issues have repeatedly held that data collection and disclosure practices including the disclosure of personal information such as social security numbers are not "highly offensive to a reasonable person" or a serious intrusion of privacy. *See In re iPhone Application Litig.*, 844 F. Supp. at 1063 (concluding "[e]ven negligent conduct that leads to theft of highly personal information, including social security numbers . . . does not constitute a violation of Plaintiffs' right to privacy"); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browsing history to third parties was not highly offensive). This Court should similarly hold that Plaintiffs have not pled facts sufficient to establish a serious intrusion that would be highly offensive to a reasonable person.

In sum, Plaintiffs' "invasion of privacy - intrusion of privacy" claim fails as a matter of law. Thus, Plaintiffs have failed to establish Article III standing on their loss of privacy harm because the facts pled do not bear a close relationship to the tort.

## IV.    RULE 12(B)(6): PLAINTIFFS FAIL TO STATE *PRIMA FACIE* ELEMENTS OF EACH CLAIM.

The Complaint also fails in its entirety under Rule 12(b)(6). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). Plaintiffs must not merely allege conduct that is conceivable but must instead allege "enough facts

to state a claim to relief that is plausible on its face." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation modified). A complaint's "basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation modified). Here, Plaintiffs fail to state at least one *prima facie* element of each claim.[5]

## A.    Plaintiffs Fail to Allege Damages (Counts I – III).

The first three causes of action asserted by Plaintiffs require them to establish injury or harm proximately caused by PacRes. *See Zehr v. Haugen*, 318 Or. 647, 656, 871 P.2d 1006 (1994) (harm to the plaintiff measurable in damages is a necessary element of negligence); *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1260–61 (D. Or. 2024) (damages are an essential element of any breach of contract claims, including implied contracts). As explained above, Plaintiffs do not plausibly allege that they suffered direct losses because of the data incursion. *See*

---

[5] This Court applies Oregon law to all the claims at the pleading phase, declining to engage in a choice-of-law analysis because it is premature. *Kelly v. Ringler Assocs. Inc.*, No. 3:14-CV-00604-YY, 2017 WL 1363338, at *5 (D. Or. Feb. 21, 2017), *report and recommendation adopted sub nom*. *Westrope v. Ringler Assocs., Inc.*, No. 3:14-CV-00604-YY, 2017 WL 1386012 (D. Or. Apr. 11, 2017). Even if the Court were to conduct a choice-of-law analysis now, Oregon law applies. "When a federal court sits in diversity to hear state law claims, the conflicts laws of the forum state—here [Oregon]—are used to determine which state's substantive law applies." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010). Oregon has codified choice-of-law rules for tort and other noncontractual claims, Or. Rev. Stat. §§ 15.400–60, as well as its choice-of-law rules for contracts, Or. Rev. Stat. §§ 15.300–80. *See Amos v. Brew Dr. Kombucha, LLC*, No. 3:19-CV-01663-JR, 2020 WL 9889190, at *2 (D. Or. Mar. 23, 2020) (applying Or. Rev. Stat. §§ 15.300–460 to analyze choice-of-law applicable to class action claims). Under Or. Rev. Stat. § 15.430, "Oregon law governs noncontractual claims in . . . actions in which none of the parties raises the issue of applicability of foreign law." Further, under Or. Rev. Stat. § 15.380, service contracts "are governed by the law of the state [where the services are to be primarily rendered] unless a party demonstrates that the application of that law would be clearly inappropriate . . . ." Here, Plaintiffs have not raised the issue of applicability of foreign law in the Complaint. Accordingly, Oregon law should govern all claims.

*supra* §§ III(a)–(c). Accordingly, the Court should dismiss Plaintiffs' negligence, negligence *per se*, and breach of implied contract claims on this basis.

> **B.    The Negligence and Negligence *Per Se* Claims Should Also be Dismissed Because Plaintiffs Failed to Plausibly Allege a "Special Relationship" to Overcome the Economic Loss Doctrine (Counts I & II).**

Plaintiffs cannot recover economic losses for negligence or negligence *per se* unless they meet a heightened standard of showing a "special relationship" beyond the common law duty to exercise reasonable care. *Paul v. Providence Health Sys.-Oregon*, 237 Or. App. 584, 591, 240 P.3d 1110 (2010) (to seek economic losses "plaintiffs must, at the least, identify a duty that defendant owed them—beyond the common-law duty to exercise reasonable care—to guard against that economic harm") (citing *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 413–14, 183 P.3d 181 (2008)). "The existence of such a duty arises from the nature of the parties' relationship." *Id.* at 591. The Oregon Supreme Court limits the types of relationships in which this heightened duty of care exists to where "the party who owes the duty has a special responsibility toward the other party." *Id.* at 592 (citing *Conway v. PacRes Univ.*, 324 Or. 231, 240, 924 P.2d 818 (1996)). Such special relationships exist only where "the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests." *Id.* "[B]ecause the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution." *Id.* (quoting *Conway*, 324 Or. 231 at 240)).

Here, Plaintiffs alleged only economic losses. Plaintiffs assert they suffered the following specific harms based on negligence theories:

> (a) invasion of privacy; (b) misuse and theft of their PII; (c) lost or diminished value of PII; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) [*sic*] loss of the benefit of the bargain; (e) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (f) experiencing an increase in spam calls, texts,

and/or emails; and (g) the continued and certainly increased risk to their PII, which, on information and belief (i) remains unencrypted and available for unauthorized third parties to access and abuse; and (ii) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

(Compl. ¶ 261.) These allegations do "not seek recovery for any personal injury or property loss," but rather are all functionally economic damages.[6] *Medici v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-00959-HA, 2014 WL 199232, at *3 (D. Or. Jan. 15, 2014) ("Under Oregon law, one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property"); *Paul*, 237 Or. App. at 587 (dismissing data breach plaintiffs' negligence and negligence *per se* claims where plaintiffs alleged "financial injury in the form of past and future costs to monitor credit reports, recurring future costs to notify and re-notify credit bureaus of fraud alerts, costs of notification to the Social Security Administration, the Immigration and Naturalization Agency, the Internal Revenue Service, State and Local law enforcement agencies and possible future costs of repair of identity theft" and sought purportedly "noneconomic damages for 'impairment of access to credit inherent in placing and maintaining fraud alerts, as well as worry and emotional distress associated with the initial disclosure and the risk of any subsequent identity theft….'" (citations omitted)).

Plaintiffs fail to meet the heightened pleading standard for recovering economic losses in negligence. Plaintiffs' only mention of a "special relationship" is their conclusory assertion that a "special relationship arose because Plaintiffs and the Class entrusted PacRes with their confidential PII, a necessary part of being customers of Defendant." (Compl. ¶ 239.) This allegation does not provide facts that could demonstrate PacRes was authorized to exercise independent judgment on Plaintiffs' behalf and in Plaintiffs' interests, or that Plaintiffs relied upon PacRes to achieve a

---

[6] Plaintiffs' allegation of harm in the form of invasion of privacy is not a cognizable harm, as discussed, *supra*, at § III (c).

desired outcome. To the contrary, Oregon law firmly holds no such relationship exists here: the "borrower-lender and bank-depositor relationships fail to give rise to a special relationship." *Deaconess Assocs., Inc. v. Wells Fargo Bank, N.A.*, No. 3:21-CV-01854-YY, 2022 WL 7690568, at *5 (D. Or. Sept. 19, 2022), *report and recommendation adopted*, No. 3:21-CV-1854-YY, 2022 WL 7584478 (D. Or. Oct. 13, 2022) (quotations omitted); *see also Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1132, 1137 (D. Or. 2014) (dismissing negligence claim because "a loan servicer-borrower relationship is not a special relationship").

With no special relationship between Plaintiffs and PacRes, Plaintiffs have not alleged a duty necessary to sustain their negligence and negligence *per se* claims for economic harms, and these counts should be dismissed. *RoHillCo Bus. Servs. LLC v. JPMorgan Chase Bank, N.A.*, No. 3:15-CV-02270-SB, 2016 WL 4051296, at *4 (D. Or. June 24, 2016), *report and recommendation adopted*, No. 3:15-CV-02270-SB, 2016 WL 4059220 (D. Or. July 25, 2016) ("Plaintiffs were required to plead a special relationship with Defendant, but failed to do so. Accordingly, Plaintiffs' negligence claim should be dismissed."); *Fleshman*, 27 F. Supp. 3d at 1132, 1137 (dismissing negligence count when plaintiff failed to show a special relationship between the parties); *Paul*, 237 Or. App. at 592-93 (plaintiff failed to state a claim for negligence *per se* for data breach because federal and state laws protecting confidentiality of health information did not establish duty giving rise to "claim for economic damages in the absence of a special relationship that protects against that type of injury").

### C.    Plaintiffs' Negligence *Per Se* Claim Should Additionally be Dismissed Because Plaintiffs Failed to Plausibly Allege a Duty (Count II).

Plaintiffs have also failed to plausibly allege a duty sufficient to sustain their negligence *per se* claim. Negligence *per se* "is a shorthand descriptor 'for a negligence claim in which the standard of care is expressed by a statute or rule.'" *Deckard v. Bunch*, 358 Or. 754, 761 n.6, 370

P.3d 478 (2016) (quoting *Abraham v. T. Henry Constr., Inc.*, 350 Or. 29, 35 n.5, 249 P.3d 534 (2011)). "A statute that sets a standard of care addresses only one element of a negligence claim; other elements remain unaffected and must be established." *Deckard*, 358 Or. at 761 n.6. "Thus, plaintiff's negligence per se claim . . . is grounded in a common law negligence claim, and to survive dismissal, plaintiff must have stated a claim of common law negligence." *Kendoll v. Oregon*, No. 3:24-CV-00330-AN, 2025 WL 975188, at *22 (D. Or. Mar. 31, 2025) (citing *Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 782–83, 542 P.3d 24 (2023)).

Applying these principles, Plaintiffs' negligence *per se* claims fails because Plaintiffs do not plausibly allege that PacRes owed Plaintiffs' a duty to protect their personal information. "[T]hat a statute creates a duty to act does not necessarily mean that it creates a heightened standard of care above the duty to avoid an unreasonable risk of foreseeable harm required to support a negligence claim." *Fleshman*, 27 F. Supp. 3d at 1138 (citing *Scovill v. City of Astoria*, 324 Or. 159, 173, 921 P.2d 1312 (1996)). "For a statute to create a duty of care to support a negligence *per se* theory, it must fix the standard of care with certainty." *Id.* The Oregon Supreme Court holds that "when a party 'invokes a governmental rule' in support of a negligence *per se* theory," the question before a court "is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine." *Id.* (quoting *Gattman v. Favro*, 306 Or. 11, 15 n.3, 757 P.2d 402 (1988)) (citation modified). "In other words, [whether] that noncompliance with the rule is negligence as a matter of law." *Id.*

Here, Plaintiffs make only conclusory allegations about standards of care purportedly established by statute but fail to specifically allege what legal standard of conduct is "so fixe[d]" by statute such that noncompliance is negligence *per se*. Plaintiffs rely on Section 5 of the FTC

Act and the GLBA to purportedly establish a legal standard of care. (Compl. ¶¶ 266–67.) But Plaintiffs do not explain what legal standard of conduct or duty Section 5 of the FTC Act purportedly fixes. Plaintiffs only alleged that it "prohibits 'unfair . . . practices in or affecting commerce' including, *as interpreted or enforced* by the FTC, the unfair act or practice by companies, such as PacRes, of failing to use reasonable measures to protect Private Information." (*Id.* ¶ 266 (emphasis added).) This, at most, suggests that the FTC might sometime in the future choose to enforce Section 5 in a situation like this; it does not fix a legal standard of care. Further, courts in this Circuit hold that the FTC Act does not create a duty for purposes of a negligence *per se* claim for the protection of consumer information. *See Veridian Credit Union v. Eddie Bauer*, *LLC*, 295 F. Supp. 3d 1140, 1158–59 (W.D. Wash. 2017); *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 955 (D. Ariz. 2024).

Plaintiffs' reliance on the GLBA is similarly misplaced. This Court previously ruled that even assuming the "FCRA and GLBA both impose duties on Defendant, neither of them fixes a standard of care such that failure to comply with the duty establishes negligence as a matter of law." *Fleshman*, 27 F. Supp. 3d at 1138–39. Thus, Plaintiffs have failed to sufficiently allege negligence *per se* and the Court should dismiss that claim. *Id.* at 1139 (GLBA did not create private right of action nor a duty, thus warranting dismissal of negligence *per se* claim).

### D.    Plaintiffs Fail To Allege Any Implied Contract Much Less a Breach of an Implied Contract (Count III).

To state a claim for breach of an implied contract, a plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App 565, 570, 927 P.2d 1098 (1996). "In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct." *Staley v. Taylor*, 165 Or. App. 256, 262, 994

P.2d 1220 (2000). "An implied-in-fact contract can arise only where the natural and just interpretation of the acts of the parties warrants such conclusion." *Id.* (citation modified). Plaintiffs failed to allege these elements.

Plaintiffs allege that they each formed an implied contract with PacRes "by which [PacRes] agreed to safeguard and protect [Plaintiffs' PII], to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data has been breached and compromised or stolen." (Compl. ¶ 284.) This is incorrect. An implied contract is created by the parties' conduct and a meeting of the minds as to its essential terms. *See Schoene*, 726 F. Supp. 3d at 1261; *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1078 (9th Cir. 1999) (discussing an implied contract under California law).

Here, Plaintiffs point to no objective conduct by PacRes that could evidence a contractual promise to secure Plaintiffs' data. Indeed, they allege only two interactions with PacRes: their mortgage applications and the Notice they received subsequent to data incursion. (Compl. ¶¶ 162, 164, 175, 177 188, 190, 201, 203.) These alleged limited interactions do not objectively evidence a promise from PacRes to contract regarding their PII. *Doe v. Or. State Univ.*, 614 F. Supp. 3d 847, 861 (D. Or. 2022) (dismissing breach of contract claim for failure to allege sufficient facts to show a meeting of the minds of mutual intent to contract); *see Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing contract claim where plaintiff failed to "allege the specific provisions in the contract creating the obligation the defendant is said to have breached"); *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1221 (11th Cir. 2023) (affirming dismissal of breach of implied contract claim where plaintiff "failed to allege any facts from which [the court] could infer [defendant] agreed to be bound by any data retention or protection policy"); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, No. 15-cv-01125-MJR, 2017 WL 1551330, at *5 (S.D. Ill. May 1, 2017)

(concluding that "implicit promise" of data security is insufficient to support implied contract claim and dismissing data breach plaintiffs' claims of negligence, negligence *per se*, breach of implied contract, and unjust enrichment claims); *see also Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX-JJT, 2022 WL 17552440, at *6 (D. Ariz. Dec. 9, 2022) (dismissing implied contract claim under Arizona law because plaintiff did not make "any non-conclusory factual allegations in the Amended Complaint as to *conduct* on the part of Defendant that somehow established an implied in fact contract with Plaintiff, let alone what the terms of that supposed additional contract were") (emphasis in original).

Plaintiffs' citations to PacRes' online privacy policy and security practices do not save their claim. (*See* Compl. ¶¶ 285, 287.) Plaintiffs do not allege that, in submitting their applications, they "accessed or read the Privacy Policy, or relied on the Privacy Policy" or PacRes' security practices. *Gardner v. Health Net, Inc.*, No. CV 10-2140 PA, 2010 WL 11597979, at *6 (C.D. Cal. Aug. 12, 2010) (dismissing claim of breach of implied contract). Nor do Plaintiffs claim that they were aware of the policy or any practices before filing suit. "[B]road statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where . . . Plaintiffs do not allege that *they read* and relied upon those statements." *Willingham v. Glob. Payments, Inc*., No. 1:12-CV-01157, 2013 WL 440702, at *20 (N.D. Ga. Feb. 5, 2013) (emphasis added). Absent such affirmative allegations of a mutual agreement, the Privacy Policy is nothing "more than a unilateral statement of company policy." *Gardner*, 2010 WL 11597979, at *6. As such, Plaintiffs fail to plead an implied contract, let alone a breach of any contract.

Lastly, to the extent Plaintiffs allege their breach of implied contract claim is really a breach of the covenant of good faith and fair dealing, their claim should be dismissed as duplicative. *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1086 (C.D. Cal. 2017), *aff'd*, 747 Fed. Appx. 643 (9th

27

Cir. 2019) ("Plaintiff's covenant of good faith and fair dealing claim is superfluous to its breach of contract claim."). In the absence of a contract, no implied covenant exists. *Swenson v. Legacy Health Sys.*, 169 Or. App. 546, 551 n.3, 9 P.3d 145 (2000).

E.    **Plaintiffs Fail To State a Claim for Unjust Enrichment because They Cannot Show that a Benefit Was Conferred or Unjust Conduct (Count IV).**

Plaintiffs' unjust enrichment claim fails because Plaintiffs have not conferred a benefit to PacRes *at all*—let alone a benefit specifically earmarked for data security. To plead a claim for unjust enrichment under Oregon law, Plaintiffs must show: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Legacy Health*, 2024 WL 4794657, at *8 (quoting *Cron v. Zimmer*, 255 Or. App. 114, 130, 296 P.3d 567 (2013)).

Plaintiffs allege that their PII has monetary value, that they provided PacRes with it, and that PacRes profits from it "for business purposes." (Compl. ¶ 303.) As with Plaintiffs' diminution of value argument above, *supra* § III(b), this Court should reject Plaintiffs' argument that their personal information holds a monetary value for purposes of an unjust enrichment claim. *See Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017) (describing personal information economic value argument as "strange[;]" and concluding it "is gibberish"); *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *11 (S.D. Tex. July 18, 2024) (dismissing unjust enrichment claim and finding that "personal information does not have an inherent monetary value") (citation modified).

In addition, Plaintiffs' allegation that PacRes "enriched itself by saving the costs it should have expended on data security measures to secure [Plaintiffs' PII]" is likewise without merit. Courts routinely reject this theory of unjust enrichment—that plaintiffs should receive restitution due to a data security incident when plaintiffs did not specifically pay for data protection. *See, e.g.,*

*In re MCG Health Data Sec. Issue Litig.*, No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428, at *6 (W.D. Wash. Mar. 27, 2023) (dismissing the plaintiffs' unjust enrichment claim in a data breach case because the allegations were conclusory and insufficient to show unjust enrichment when the plaintiffs did not allege that defendant used funds the plaintiffs paid for data security), *report and recommendation adopted*, No. 2:22-CV-849-RSM-DWC, 2023 WL 4131746 (W.D. Wash. June 22, 2023); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (N.D. Ill. 2016) ("Irwin paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom."); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) (same; "Plaintiffs paid for burritos; Plaintiffs received burritos. Plaintiffs' unjust enrichment claim fails to state a claim for which relief may be granted and must be dismissed."); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020) (same; "Plaintiffs have not alleged that any specific portion of their payments went toward data protection; rather, they state that their payments were for food and gas."). Accordingly, the Court should dismiss Plaintiffs' unjust enrichment claim for failure to allege that Plaintiffs conferred a benefit to PacRes.

Moreover, even if Plaintiffs had conferred a benefit (they did not), they fail to allege that PacRes' retention of that benefit would be unjust. Indeed, Plaintiffs have not pled facts showing that they are entitled to the return of "something which in equity and good conscience did not belong to [PacRes]." *BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*, 614 F. Supp. 3d 838, 846 (D. Or. 2022) (quoting *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n*, 281 Or. 533, 558, 577 P.2d 477 (1978)). Nor have Plaintiffs identified any "established legal categories of unjust enrichment as reflected in Oregon case law" or the *Restatement (3d) Restitution*, which allows them the relief they seek. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132-33, 404

P.3d 912 (2017). In the context of a data incident, an unjust enrichment claim cannot succeed absent allegations that the plaintiff conferred a benefit on the defendant *in exchange for* data protection. *Perdue*, 455 F. Supp. 3d at 766.

Beyond conclusory allegations, Plaintiffs offer no factual basis that the mortgage applications involved additional data protection benefits or that they paid a premium for data protection. Instead, Plaintiffs allege that they provided their PII "as part of [his/her] mortgage application with [PacRes]." (Compl. ¶¶ 162, 175, 188, 201.) And Plaintiffs do not claim PacRes failed to accept their applications or that they did not receive fair consideration on their mortgages, such that they did not get the benefit of the bargain. Thus, they fail to show how PacRes' retention of the alleged payments would be unjust. *See BenefitElect, Inc.*, 614 F. Supp. 3d at 846 (dismissing plaintiffs' unjust enrichment claim because they had received the benefit of the bargain); *see also In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) ("Because Holmes does not allege that *any specific portion* of his payment went toward data protection, he has not . . . shown how SuperValu's retention of his payment would be inequitable" and dismissing data breach plaintiffs' claims.) (emphasis added).

Lastly, equitable relief, such as restitution, is not available where Plaintiffs' remedies at law would be adequate. *See Alsea Veneer, Inc. v. State*, 318 Or. 33, 36, 862 P.2d 95 (1993) ("Equitable relief does not lie if there is an adequate remedy at law."); *In re Ford Tailgate Litig.*, No. 11–CV–2953–RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (dismissing certain equitable relief claims, including unjust enrichment, and noting that where an equitable claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action"). Here,

Plaintiffs' other causes of action, if successful, would provide adequate remedies at law, which bar Plaintiffs' unjust enrichment claim.

**F.    Plaintiffs Fail to Adequately Allege a Cause of Action for Invasion of Privacy – Intrusion Upon Seclusion (Count V).**

As shown above, *see supra* § III(c), Plaintiffs fail to establish any of the elements of a privacy injury to establish Article III standing. For the same reasons, Plaintiffs have failed to state a claim for invasion of privacy-intrusion of seclusion and the claim should be dismissed.

**V.    CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiffs' complaint in its entirety and the dismissal should be with prejudice because the stated defects are irremediable.

Dated: August 28, 2025                    **STOEL RIVES LLP**

By:   *s/ Nathan R. Morales*
―――――――――――――――――
**Nathan R. Morales,** OSB No. 145763
nathan.morales@stoel.com
**Seth H. Row,** OSB No. 021845
seth.row@stoel.com
**Alexandra Choi Giza,** OSB No. 214485
alexandra.giza@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

**Ian H. Fisher** (*pro hac vice*)
ifisher@taftlaw.com
**Ioana M. Guset** (*pro hac vice*)
iguset@taftlaw.com
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2600
Chicago, IL 60601-4208
Telephone:  (312) 527-4000

*Attorneys for Pacific Residential Mortgage, LLC*

## LOCAL RULE 7-2(B) CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page limitation under Local Rule 7-2(b) because it contains 31 pages including headings, footnotes, and quotations but excluding the caption, table of contents, table of cases and authorities, signature block, and any certificates of counsel.

Dated: August 28, 2025

       *s/ Nathan R. Morales*
       Nathan R. Morales

150255047.1 0084947-00001